333 A.2d 773

**COMMONWEALTH of Pennsylvania**

v.

**David Robert LEE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 7, 1974.

Decided March 18, 1975.

**376**

John J. Dean, John H. Corbett, Jr., Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., L. R. Paulick, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant was convicted by a jury of murder in the first degree for the stabbing death of his stepfather, William Donald. Following the denial of his post-verdict motions, he was sentenced to life imprisonment. This appeal followed.

Early in the evening of January 22, 1972, appellant returned to his home in the Oakland section of the City of Pittsburgh, which he shared with his mother, stepfather, brother and brother's wife and child. Before his arrival, his mother and stepfather had been arguing over who was the benefactor responsible for a new stove which had been delivered to the house that day. His mother, Mrs. Donald, had claimed that the stove was a gift from her mother, but her husband, Mr. Donald, accused his wife of having received it from an alleged paramour. When the appellant joined the others he asked

his stepfather what he thought of the new stove. This precipitated a tirade by Mr. Donald who inveighed against the appellant and the entire family. In the course of this verbal barrage appellant left the living room where the argument was taking place, entered the kitchen, removed a butcher knife from a cupboard, placed the knife in his trousers and returned to the living room. The quarrel was resumed, and in the course of it appellant stood over Donald, who was seated on the couch, and stabbed him 15 times in the area of the chest and head. From these blows the victim died.

Appellant has raised two grounds for appeal: that the evidence was insufficient to support a verdict of murder in the first degree, and that he was denied his constitutional right to a speedy trial.

This Court has often repeated the proper test for reviewing claims of insufficiency of the evidence to support a guilty verdict: " 'The test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' " *Commonwealth v. Carbonetto*, 455 Pa. 93, 95, 314 A.2d 304, 305 (1974), quoting from *Commonwealth v. Clark*, 454 Pa. 329, 331, 311 A.2d 910, 911 (1973).[1] The Commonwealth, as verdict winner, is, of course, entitled to have the evidence considered in the light most favorable to it. *Commonwealth v. Rife*, 454 Pa. 506, 409, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 404, 272 A.2d 886 (1971). So viewed, we are satisfied that the evidence was sufficient to support the verdict.

Appellant contends particularly that there was insufficient evidence of premeditation and that as a re-

1. Under the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187, it is the duty of the Supreme Court in cases of murder in the first degree to review the entire record to determine whether the evidence is sufficient to establish all the elements of that offense.

sult the homicide could not rise higher than murder in the second degree. This argument is without merit. The evidence as recounted above established that appellant left the affray with his stepfather, deliberately went into the kitchen, obtained a butcher knife, returned with it concealed in his trousers and then, after the resumption of the argument, killed his stepfather with the knife. Lee testified in his own defense that he didn't remember obtaining the knife, that the only knife he saw was one brandished by Donald, who had lunged towards him with a knife. This evidence was directly contradicted by the appellant's sister-in-law, who testified she saw appellant obtain the knife from the kitchen, and by his mother, who testified that she neither saw the victim with a knife nor saw him striking Lee in any manner. It was for the jury to decide which version of the events to believe and whether the appellant had "formed in his mind the conscious purpose of taking life." *Commonwealth v. Scott*, 284 Pa. 159, 163, 130 A. 317, 319 (1925). Where, as here, the evidence is sufficient for the jury to make a finding of murder in the first degree, we will not disturb it. *Commonwealth v. Smith*, 447 Pa. 457, 463, 291 A.2d 103, 105 (1972).

Appellant's other contention is that he was denied his constitutional right to a speedy trial. On the day set for trial, July 25, 1973, appellant moved that the charges against him be dismissed, with prejudice, on this ground. After hearing argument on the issue, the trial court denied the motion and the case proceeded to trial.

Before passing on the merits of appellant's claim, a brief review of the relevant events leading up to his trial is in order. On the evening of the slaying, January 22, 1972, Lee surrendered to the police. He was indicted on March 9, 1972 on charges of murder and voluntary manslaughter. On September 12, 1972, upon petition of his counsel, appellant was ordered released from custody pending trial, pursuant to the Act of March 31, 1860, P.

L. 427, § 54, as amended, 19 P.S. § 781. (Appellant remained at liberty until March 13, 1973 when he was arrested on several unrelated charges). Trial was then scheduled for October 2, 1972. Several days before the trial date, defense counsel requested a continuance for the purpose of securing a psychiatric evaluation of Lee. This was allowed, and trial was rescheduled for January 22, 1973, but was not reached that day due to the heavy docket of the court. Without objection by appellant, trial was again continued, this time to April 2, 1973. On that day, at the request of new counsel for appellant, another postponement was granted. Trial was finally had on July 25, 1973, as indicated above.

■ The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, P.S. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court of the United States enumerated four factors which are to be balanced in determining whether an accused has been denied his right to a speedy trial: "Length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. This Court has assiduously followed these guidelines. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974); *Commonwealth v. Williams*, 457 Pa. 502, 327 A.2d 15 (1974); *Commonwealth v. Pearson*, 450 Pa. 467, 303 A.2d 481 (1973); *Commonwealth v. Jones*, 450 Pa. 442, 299 A.2d 288 (1973); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972).[2]

■ Applying the *Barker* balancing test to the facts of this case, we hold that appellant was not denied his

2. This Court has adopted a rule of criminal procedure, Rule 1100, 19 P.S. Appendix, which goes beyond the requirements of the United States Supreme Court by requiring, *inter alia*, that in a court case in which a written complaint is filed after June 30, 1974, trial shall commence no later than 180 days from the filing of the complaint. The rule has no application to the instant case

right to a speedy trial. We agree with appellant that the almost 17 month delay between indictment and trial does act as a "triggering mechanism," *Barker, supra,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117, requiring a further inquiry into the remaining three factors. An examination of those factors, however, leads us to conclude that they do not weigh heavily in appellant's favor. As far as the reasons for the delay are concerned, it is apparent that appellant has little cause for complaint, as two of the three continuances were at the behest of his own counsel, and the third, necessitated by the heavy court workload, was made with his acquiescence. Furthermore, at no time prior to the day set for trial did appellant assert his right to a speedy trial.

Appellant places principal reliance on the fourth factor listed by the *Barker* Court, the element of prejudice to the accused. He alleges he was subjected to oppressive incarceration throughout much of the time he was awaiting trial; that he suffered considerable anxiety and concern; and that his defense was impaired as a result of the delay. These are all interests identified by the Court in *Barker* as being indicative of prejudice, with the last the most serious. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

The claim of oppressive incarceration is plainly without merit. As recounted above, appellant was released from custody approximately six months after indictment. He remained free for about another six months before being arrested on *other charges.* Any further imprisonment prior to trial was thus unrelated to the instant charge. The claim of anxiety and concern, while asserted in appellant's brief, is not borne out by the record.

The fundamental ground of appellant's claim of prejudice is that his defense was impaired as a result of

since it was adopted June 8, 1973 and was effective prospectively as set forth therein.

the delay. Principally, he asserts that his mother, who had witnessed the stabbing, had forgotten what really occurred that night. He attempts to demonstrate this by comparing his mother's trial testimony with her testimony at the coroner's inquest, held several weeks after the slaying, and by pointing to various inconsistencies between the two. He further points to what he states are contradictions between her trial testimony on direct examination and that on cross-examination.

After a review of the testimony of appellant's mother we are not persuaded that appellant was prejudiced by any delay in being brought to trial. Mrs. Donald was a Commonwealth witness; the alleged contradictions and gaps in her testimony are minor; on the essential details of the fatal evening her memory appeared unimpaired despite her own statement that she had attempted to erase the episode from her mind.

Having considered and weighed all of the above factors, we have concluded that appellant was not denied his right to a speedy trial.

Judgment of sentence affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.