378 A.2d 1006

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth PAULL, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1976.

Decided Oct. 6, 1977.

Jay M. Goldstein, Upper Darby, with him Alvin S. Ackerman, Upper Darby, for appellant.

Ralph B. D'Iorio, Assistant District Attorney, Media, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

A jury found appellant guilty of arson, causing or risking a catastrophe, and criminal trespass. On this appeal appellant contends that the trial judge should have charged the jury that it could draw an adverse inference from the

Commonwealth's failure to produce an eyewitness, and that the Commonwealth should have informed the defense of the witness's name and whereabouts.

One of the Commonwealth's witnesses was a thirteen-year-old boy, John Rivers. Rivers identified appellant as having been at the scene of the arson. Appellant was wearing blue dungarees and a dungaree jacket, and was "trying to get the door open" of the building in question. Having already seen two gasoline cans on the ground beside appellant's car, and knowing that the building was empty, Rivers suspected that appellant was going to set a fire; accordingly (with considerable presence of mind, we may remark), he noted appellant's license plate number by wetting his finger and writing the number on the rear-view mirror of his bicycle. After appellant entered the building, Rivers heard a loud sound and saw flames coming from a window, and then saw appellant run from the building, jump in his car, and leave. Rivers told the police what he had seen, including the license plate number and a description of appellant's car as a dark blue Cadillac with a white vinyl top. When appellant was apprehended, he was wearing blue dungarees and a dungaree jacket. Three gasoline cans—two of them matching in color the cans described by Rivers—were found in the trunk of appellant's car, which was a light blue Cadillac with a white vinyl top.

During his testimony Rivers mentioned that another boy, Tony Humphrey, had been with him during the early stages of his observation of appellant. Although the testimony is not entirely clear, it appears that Humphrey left while appellant was attempting to open the door of the building, that is, before he entered the building. Cross-examination yielded the following:

Q. You had a friend with you on that day, you said. I think if I remember your testimony on direct examination your friend was with you and saw the stuff laying by the trunk, and he saw the man go into the building, and that is when he took off. Am I correct in that?

A. No.

Q. When did your friend leave? At what point in time?

A. When we got near the corner, when I told him he was probably trying to set the place on fire.

Q. What is his name?

A. Tony Humphrey.

Q. Did he see him at that time.

A. Yes.

.    .    .    .    .

Q. What is Tony's address?

A. I don't know.

Q. Does he live in Darby?

A. Yes.

Q. Does he go to school with you?

A. No.

.    .    .    .    .

Q. What school does he go to?

A. He goes to Bell Avenue.

Q. How far way do you live from him?

A. Three blocks.

Q. You still see him, don't you? Are you still friendly?

A. Yes.

Q. How come he is not here?

MR. SMITH [District Attorney]: Objection

THE COURT: Sustained.

MR. SMITH: Don't answer the question.

BY MR. ACKERMAN [Defense Counsel]:

Q. Did you tell the police about him?

A. Yes.

Q. You did tell the police about Tony?

A. Yes.

N.T. 17018.

■ The investigating officer testified that he believed, but was not sure, that Humphrey was with Rivers at the time of the fire, but that he had not spoken with Humphrey.

Pennsylvania decisions have long recognized that in criminal trials the prosecution is not absolutely bound to call to the stand all available and material eyewitnesses. [Citations omitted.] On the other hand, a number of decisions clearly indicate that when the Commonwealth does not call to the stand such an eyewitness, it must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to procure the witness unaided. [Citations omitted.]

*Commonwealth v. Carter,* 427 Pa. 53, 54–55, 233 A.2d 284, 285 (1967).

Failure to call an eyewitness entitles a defendant to a charge permitting the inference that that witness's testimony would have been unfavorable to the Commonwealth, unless the Commonwealth adequately explains its inability to produce the witness, *Commonwealth v. Jones,* 452 Pa. 569, 581, 308 A.2d 598, 606 (1973), or establishes other reasons why the witness need not or should not be called, *Commonwealth v. Smith,* 227 Pa.Super. 355, 373–74, 324 A.2d 483, 492–93 (1974).

■ A prerequisite to a finding that the Commonwealth has failed to produce an available and material eyewitness is that the Commonwealth had the power to produce the witness. *Commonwealth v. Trignani,* 185 Pa.Super. 332, 340, 138 A.2d 215, 219 (1958), citing 2 Wigmore on Evidence § 286 (3d ed. 1940). The lack of power to produce may be due to ignorance of the witness's possession of useful information. 2 Wigmore on Evidence § 286. "Furthermore, it seems plain that possible witnesses whose testimony is for any reason comparatively *unimportant,* or *cumulative,* or *inferior* to what is already utilized, might well be dispensed with by a party on general grounds of expense and inconvenience, without any apprehension as to the tenor of their testimony." *Id.* § 287. The calling of witnesses is within the discretion of the district attorney under the general di-

rection of the trial judge. *Commonwealth v. Thurman,* 167 Pa.Super. 642, 647, 76 A.2d 483, 485 (1950).

■ Here the lower court correctly exercised its discretion in refusing the requested charge. Nothing in the evidence indicated that Humphrey could offer anything more than information of marginal usefulness to either side. Since apparently he left the scene before appellant entered the building, he would not be able to testify either to the fire or to appellant's leaving the building. His only contribution would be identification of appellant; and on this his testimony would most likely be inferior to Rivers', since he had less time than Rivers to observe appellant. Moreover, the police had Rivers' detailed description of appellant and of appellant's car and license plate number. Within hours after the fire, appellant was in custody; his clothes and license plate number exactly matched those described by Rivers; his car closely resembled that described by Rivers; and in the car's trunk were gasoline cans similar to those that Rivers said he had seen on the ground beside the car. In these circumstances the police and prosecutor could reasonably conclude that it would have been superfluous to seek out Humphrey. Thus under either of Wigmore's formulations the Commonwealth may be regarded as without the power to produce Humphrey: either the Commonwealth was ignorant of Humphrey's possession of useful information, or it appeared that his testimony would be comparatively unimportant, or cumulative, or inferior.

■ As to the contention that the Commonwealth should have informed the defense of Humphrey's name and whereabouts, *Commonwealth v. Carter, supra,* we find two factors dispositive. First, defense counsel made no pre-trial requests for discovery or particulars. Second, at trial defense counsel had as much information about Humphrey as did the Commonwealth; it does not appear why, if counsel wished, he could not call Humphrey.

Affirmed.