441 A.2d 1239

COMMONWEALTH of Pennsylvania

v.

Ronald Vernon MATT, Appellant.

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Feb. 16, 1982.

Harry C. J. Blair, Easton, for appellant.

John Gallagher, District Attorney, Easton, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

CAVANAUGH, Judge:

On April 17, 1975, following a jury trial, the appellant, Ronald Vernon Matt, was found guilty of robbery. Post trial motions were denied and dismissed by the court en banc. On October 18, 1975, Matt was sentenced to a term of imprisonment of four to eight years. Matt, by his trial counsel, appealed and we affirmed the lower court. *Commonwealth v. Matt*, 249 Pa.Super. 98, 375 A.2d 777 (1977).

In the matter now before us the appellant attacks his conviction by way of a Post Conviction Hearing Act petition. The petition claims that the appellant has been denied his constitutional right to effective assistance of counsel; and that his sentencing was defective due to the trial court's failure to comply with the requirements of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). The lower court, recognizing that *Riggins* has been given retroactive application in *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977), ordered that Matt be resentenced,[1] but dismissed the remaining claims as without merit. This appeal followed. We reverse.

Perceived in the light most favorable to the Commonwealth, *see Commonwealth v. Lee*, 460 Pa. 374, 333 A.2d 773 (1975); *Commonwealth v. Irvin*, 260 Pa.Super. 122, 393 A.2d

---

1. The propriety of appellant's sentence is, therefore, not before us.

1042 (1978), the following was adduced at trial. On February 3, 1975 the victim of the robbery, Joseph Feist, met appellant and discussed the purchase of a stereo from one of appellant's friends. Later in the day appellant and Feist joined a third person who was to drive them to see the stereo. While in the car the appellant grabbed a spatula and held it to the victim's throat. He demanded the victim's money, punched him and forced his head against the dashboard. While the victim was so positioned, the appellant removed $140.00 from him. According to the appellant he and Feist had been playing pool earlier in the day and that as a result Feist owed him $55.00. Matt claimed that the scuffle in the car arose due to his efforts to recover the gambling debt. Appellant admitted that he tried to get money from Feist, that he struck him with his hand and attempted to hit him with the spatula. However, he denied taking any money. The victim, Feist, on the other hand denied losing $55.00 to Matt while playing pool and stated that he did not know how to play pool.

First we will consider appellant's claim of ineffective assistance of counsel. We have often stated the test for determining whether trial counsel has been effective:

> We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967).

As noted above, as part of Matt's defense he claimed that he had been playing pool with Feist on the day of the alleged robbery. During cross-examination the Common-

wealth questioned Matt as to the whereabouts of the attendant at the pool hall who might corroborate Matt's testimony. The following exchange took place:

Q How long were you playing pool there that day?

A No more than—no more than an hour, if that long.

Q You mean he lost $55 to you in one hour's time?

A Less than an hour, yeah.

Q Less than an hour?

A Yeah.

Q Is that pool hall attendant—is he in the courtroom here? Do you see him here?

MR. PASLINE: I object to that.

THE COURT: The objection is overruled.

BY MR. FREEDBERG:

Q. The man that was the attendant there, you don't see him in the courtroom here today. Do you?

A. No, I don't.

Q. And he could bear out your story that you—

MR. PASLINE: I'm going to object to that.

THE COURT: Overruled.

BY MR. FREEDBERG:

Q According to you, he was there. He can bear out your story that there was a pool game between you and Feist. Isn't that correct?

A Not necessarily.

Q Well, he was there. Wasn't he?

A Yes. He was there.

Appellant's trial counsel did not question the appellant concerning the attendant. During the charge to the jury the court stated:

The pool room owner or the pool room operator was not called as a witness by the defendant and he did not testify. In light of this, you may, if you wish, conclude that had he testified, his testimony would have been unfavorable to the defendant, but you cannot reach that conclusion until you are sure that the following conditions have not been met: First, the defendant must have given

no reasonable explanation of why the witness did not testify. Secondly, you must conclude that the witness would have some knowledge or information important to your decision in this case; and, third, that he must have been more available to and had he been called, more likely to be favorable to the defendant than the Commonwealth. If those conditions are met, as I have outlined them, then you may conclude that the owner's testimony would have been unfavorable to the defendant, who failed to call him, but even if those conditions do not exist, then, of course, you are not required to draw that conclusion.

 The charge is consistent with the "missing witness rule" which provides that a negative inference may be drawn from a party's failure to call a corroborating witness who was in his control:

The criteria for determining when an inference can properly be drawn from the failure of a party to call a witness are well-settled. 'Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, *without satisfactory explanation he fails to do so,* the jury may draw an inference that it would be unfavorable to him.' *Wills v. Hardcastle,* 19 Pa.Super. 525, 529 (1902); *Green v. Brooks,* 215 Pa. 492, 496, 64 A. 672 (1906); *Haas v. Kasnot,* 371 Pa. 580, 584, 585, 92 A.2d 171 (1952).

*Commonwealth v. Gibson,* 245 Pa.Super. 103, 105–06, 369 A.2d 314, 315 (1976).[2] *See also Commonwealth v. Wright,* 444 Pa. 536, 282 A.2d 323 (1971);[3] *Commonwealth v. Paull,*

---

**2.** *Cf.* McCormick on Evidence, § 272 (2d ed. 1972):

"It is often stated that when a particular witness is available, and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference would have been unfavorable." [footnotes omitted].

**3.** In *Wright* the court emphasized that the inference the jury is permitted to draw is only permissible and *not* mandatory. The court went on to state that "such inferences do not affect the presumption of innocence. The Commonwealth must still prove that the defend-

250 Pa.Super. 416, 378 A.2d 1006 (1977). One exception to this rule is where the witness is not available or not within the control of the party against whom the negative inference is desired. *See Commonwealth v. Wright, supra; Commonwealth v. Gibson, supra.* Appellant argues that his trial counsel was ineffective for failing to establish that the attendant was not in appellant's control because Matt was unable to contact him.[4] Matt was a newcomer and therefore unknown in the area; he did not know the attendant's name and, more importantly, he was incarcerated from the time of his arrest until trial.

At the PCHA hearing the following exchange took place during the direct examination of appellant's trial counsel, Harris Pasline:

Q So you made no attempt to find any attendant in the pool hall?

A I didn't feel it was relevant, until Mr. Freedberg brought it out at trial, and which I objected to.

. . . . .

Q [But you did not cross-examine or] redirect with respect to his prison status. Did you?

A That is always a delicate situation and that is a decision that's made there on the spot. I must assume that if I made a decision not to discuss it with—his prison record, I did feel that was also detrimental to his case.

The lower court held that trial counsel's decision not to inform the jury that appellant was in prison was not ineffective in that it had "at least some reasonable basis designed to effectuate his client's interest." However, the record

ant committed the crimes alleged beyond a reasonable doubt." 444 Pa. at 541, 282 A.2d at 325.

4. There is no evidence on the record that appellant's trial counsel undertook an investigation concerning the existence of the pool hall attendant. In fact counsel admitted that he did not think the testimony of such a witness would be relevant. It is clear, however, that the pool hall attendant could have corroborated appellant's version of the events and serve to discredit the testimony of Feist. As such counsel was ineffective for failing to investigate. See *Commonwealth v. Bailey*, 480 Pa. 329, 390 A.2d 166, 170 (1978).

discloses that trial counsel did not, in fact, make a decision not to discuss appellant's prison status. Rather, trial counsel specifically requested that the lower court judge instruct the jury that because Matt was in prison he would have difficulty finding the missing witness. The following discussion took place at side bar during the jury charge:

Gentlemen, is there anything you wish me to add to this charge?

MR. FREEDBERG: No, your honor.

(the following discussion took place at side bar:)

MR. PASLINE: One of the problems also in bringing a witness in, which you did not charge on, is the fact that he is in prison, which makes it, you know, difficult for him to go out and find this person.

MR. FREEDBERG: There is no evidence to that effect.

THE COURT: You are his lawyer.

This contradicts trial counsel's testimony at the PCHA hearing. Just as the benefit of hindsight cannot be used to determine the reasonableness of a particular trial tactic, the benefit of hindsight cannot be used to transform counsel's omission into a tactical decision. Thus counsel's failure to explain the absence of the corroborating witness cannot be said to have had a reasonable basis so as to effectuate appellant's interests. If evidence had been admitted that Matt was incarcerated the objection to the charge should have been sustained. As it was, the jury was permitted to infer that the testimony of this attendant would have been adverse to the appellant. Therefore, we hold that the appellant was denied the effective assistance of counsel and is entitled to a new trial.

In view of our disposition, we need not address the appellant's remaining arguments.

Order reversed. New trial granted.

WATKINS, J., files dissenting opinion.

300

**WATKINS, Judge, dissenting:**

I respectfully dissent. Although the defendant's trial counsel might have handled this matter in a better fashion, I cannot say that the one, isolated incident during the trial which is cited by the Majority as the reason for its holding amounts to ineffective assistance of counsel.

A defendant is not entitled to a "perfect trial", but is merely entitled to a fair trial. Under all of the circumstances of this case, I believe that the defendant in the instant case was given a fair trial.