500 A.2d 820

**COMMONWEALTH of Pennsylvania**

v.

**Walter UNDERWOOD, Appellant.**

Superior Court of Pennsylvania.

Submitted May 21, 1985.

Filed Sept. 27, 1985.

Reargument Denied Dec. 5, 1985.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

Walter Underwood was convicted by a jury in the Court of Common Pleas of Philadelphia County on charges of robbery, simple assault, and conspiracy. He was sentenced by the Honorable Angelo A. Guarino to three to seven years in prison, and here appeals the judgment of sentence.

The evidence shows that on August 22, 1983, Charles Blow was walking down 24th Street in Philadelphia when he came upon four men standing on the sidewalk talking amongst themselves. Hoping to avoid the men, Blow circled into the middle of the street. Underwood followed Blow into the street and positioned himself in front of Blow, impeding his progress and restraining him with his arm. Underwood asked Blow for money, to which Blow responded he had none. As Blow tried to move away, Underwood told him he "wasn't going anywhere." At that point someone struck Blow in the head from behind with a bottle, dazing the man, and someone rifled Blow's pockets, retrieving keys and $3.85 in cash. Blow did not see who committed these latter acts. However, he testified that the four men he had first seen were the only people on the block, and that after the incident all four walked away together.

Underwood was arrested a short distance away by Officer Goldsmith, who testified at trial as to the circumstances of the arrest:

I was patrolling in my car and as I got to the corner of 23rd and Bainbridge Street, there was a group of [about seven or eight] young adults there.... They were hollering as I rode by that a fellow running up Grays Ferry Avenue had just robbed somebody.... [T]hey were indi-

cating that the fellow running up Grays Ferry Avenue ... had just robbed an older man.

Goldsmith immediately apprehended Underwood, who was alone and running "at a track-type pace" on Grays Ferry Avenue. Blow then came up and identified Underwood as one of the robbers.

Underwood's defense at trial was that he had spent the day with his friends panhandling for money to buy wine, and that two men (not the aforementioned friends) had robbed Blow while Underwood was innocently asking him for money. Underwood said he left the scene with his friends when he feared he would be implicated in the robbery.

On appeal to this Court, Underwood asks for a new trial on two grounds: 1) the trial court's admission into evidence of the out-of-court declarations made to Officer Goldsmith by the young adults; and 2) the court's refusal to give a "missing witness" instruction to the jury based on the Commonwealth's failure to produce the young adults at trial.

## I

Underwood argues that the statements of the young adults, to the effect that the man running had just robbed somebody, were hearsay statements prejudicial to his "mere presence" theory of defense, and that the statements were not admissible under any recognized exception to the hearsay rule.

■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 462 A.2d 270 (1983); *Commonwealth v. Darden,* 311 Pa.Super. 170, 457 A.2d 549 (1983). Hearsay is generally inadmissible as evidence because the competency and veracity of the original speaker are not subject to examination. *Commonwealth v. Lewis,* 314 Pa.Super. 298, 460 A.2d 1149 (1983); *Commonwealth v. Perry,* 279 Pa.Super. 32, 420 A.2d 729 (1979). Therefore, unless the

statements made to Officer Goldsmith fall under some exception to the hearsay rule, they were not admissible as substantive evidence that Underwood had robbed a man. It does not appear that a proper foundation was laid to admit the statements as "excited utterances," the only hearsay exception of arguable applicability to this case. *See Commonwealth v. Galloway,* 336 Pa.Super. 225, 485 A.2d 776 (1984) (it must appear hearsay declarant had opportunity to perceive event); *Commonwealth v. Summers,* 269 Pa.Super. 437, 410 A.2d 336 (1979) (foundation includes evidence of personal observation and showing that statement was spontaneous product of shock or injury); *see generally Commonwealth v. Blackwell,* 343 Pa.Super. 201, 494 A.2d 426 (1985). Therefore, these statements were not admissible for their truth. *Cf. Summers.*

■ However, evidence that would constitute inadmissible hearsay if offered for one purpose may be admitted for another purpose, subject to the duty of the trial court to give limiting instructions if requested. *See Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1974). Here the honorable trial judge explicitly admitted the exclamations of the young adults not as proof that Underwood in fact had robbed a man, but as circumstantial evidence to explain why Goldsmith arrested Underwood. Underwood did not request cautionary instructions, nor did he interpose anything but general objections to Goldsmith's testimony at trial. Where only a general objection is made to the admission of evidence, its admission is not error if the evidence is competent for any purpose. *Woldow v. Dever,* 374 Pa. 370, 97 A.2d 777 (1953). Of course, we can affirm a trial court if for any reason its admission of evidence was proper. *Commonwealth v. Pettiford,* 265 Pa.Super. 466, 402 A.2d 532 (1979).

"It is well settled that an out-of-court statement offered to explain a course of conduct is not hearsay. *Commonwealth v. Cruz,* 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Ryan,* 253 Pa.Super. 92, 384 A.2d 1243 (1978)." *Lewis, supra,* 314 Pa.Super. at 305–06, 460 A.2d at

1152. This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest. *Commonwealth v. Matthews*, 314 Pa.Super. 38, 460 A.2d 362 (1983) (out-of-court statement that contraband was in certain apartment and that Matthews had put it there); *Commonwealth v. Stewart*, 304 Pa.Super. 382, 450 A.2d 732 (1982) (contents of phone call to police from residence where victim's body discovered; defendant found leaving premises); *Commonwealth v. Ryan, supra* (plurality opinion) (police radio calls referring to unrelated hold-ups); *Commonwealth v. Smith*, 250 Pa.Super. 436, 378 A.2d 1015 (1977) (allocatur refused), *cert. denied*, 439 U.S. 835 (1978) (declarant told officer he could place bets by calling defendant's telephone number); *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 181 A.2d 710 (1962) (allocatur denied) (informant tip that defendant was conducting a lottery); *see also Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973) (alleged co-conspirator's denial of involvement offered to show why police *did not* arrest him); *Lewis, supra* (admission of out-of-court statement that set wheels in motion for defendant's capture); *State v. McIntosh*, 635 S.W.2d 370 (Mo.Ct.App.1982) (phone call identifying defendant admitted to show course of conduct leading to her apprehension); *see generally* 6 J. Wigmore, *Evidence* §§ 1788–89 (Chadbourn rev.1976) (declarations as circumstantial evidence).

Professor McCormick succinctly summarized the theory upon which out-of-court statements are admitted to explain a course of police conduct:

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate

historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.

C. McCormick, *Evidence* § 249, at 734 (Cleary 3rd ed. 1984) (footnotes omitted).

As Professor McCormick points out, there is a balance to be struck between the dangers of hearsay testimony and the need for circumstantial evidence to explain why the police acted as they did. In determining whether Judge Guarino properly struck that balance, we must not forget the general principles that govern an appellate court's review of evidentiary decisions taken in the trial court: the admission and exclusion of evidence are matters committed to the sound discretion of the trial judge, whose decision will not be reversed unless it amounts to an abuse of discretion. *Commonwealth v. Jackson,* 336 Pa.Super. 609, 486 A.2d 431 (1984); *Commonwealth v. Lumpkins,* 324 Pa.Super. 8, 471 A.2d 96 (1984); *Commonwealth v. Krajci,* 283 Pa.Super. 488, 424 A.2d 914 (1981). Not all relevant evidence is admissible, and the trial court may exercise its discretion to exclude evidence that, though relevant, may confuse, mislead, or prejudice the jury. *Commonwealth v. Perry,* 307 Pa.Super. 327, 453 A.2d 608 (1982); *accord, Commonwealth v. Boyle,* 498 Pa. 486, 447 A.2d 250 (1982) (plurality opinion); *Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564 (1973); *see generally* McCormick, *supra,* § 185. As Judge Hester said in *Commonwealth v. Shain,* 324 Pa.Super. 456, 462, 471 A.2d 1246, 1248–49 (1984) (allocatur denied), "An abuse of that discretion may be found if it appears that a trial judge admitted irrelevant evidence that was prejudicial to the accused or evidence the probative value of which was outweighed by its prejudicial impact or its tendency to suggest decision on an improper basis." However, an abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill

will, as shown by the evidence or the record, then discretion is abused. *Commonwealth v. Miller*, 303 Pa.Super. 504, 510 n. 4, 450 A.2d 40, 43 n. 4 (1982) (citing *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980); *Man O'War Racing Association v. State Horse Racing Commission*, 433 Pa. 432, 250 A.2d 172 (1969)).

Under this standard, we are unable to find that the learned trial judge abused his discretion. The statements of the youths were necessary for a proper understanding of why Officer Goldsmith stopped Underwood, who according to his own testimony was a mere innocent beggar uninvolved with the crimes against Blow. As Judge Guarino commented at the post-verdict motions hearing, it would have seemed an "irrational act" for the officer to have detained this poor beggar without evidence that someone had pointed him out. Perhaps Judge Guarino could have restricted Officer Goldsmith to testifying that he arrested Underwood "on information received"; however, as a practical matter it is highly doubtful that such a tactic could have saved the defendant from the unfavorable inference that some third party tipped the officer, especially since it had already been established through Blow's testimony that Blow did not identify Underwood to the police until after the arrest. *See also Commonwealth v. Farris*, 251 Pa.Super. 277, 380 A.2d 486 (1977) (disparaging effectiveness of formulation "as a result of information received ...").

In weighing the prejudice to the defendant against the need for the challenged evidence, we may also properly consider that Underwood never moved to mitigate the prejudicial impact of the out-of-court statements by requesting an instruction that they not be considered as evidence of guilt. *See Commonwealth v. Bryant*, 316 Pa.Super. 46, 462 A.2d 785 (1983); *see also State v. Ford*, 322 N.W.2d 611 (Minn.1982) (defendant's failure to raise inadequacy of cautionary instruction at trial where police testified to contents of tip identifying defendant).

Finally, it would be hypocritical of us to cite Judge Guarino for "overriding" or "misapplying" the law, when in making his ruling he was entitled to rely on our own

decisions in *Matthews, Stewart, Smith,* and *Tselepis, supra;* in each of these cases we held that an out-of-court statement was admissible to convey to the jury the circumstances surrounding the defendant's arrest, despite the potential prejudice inherent in the statement's direct or implicit identification of the defendant with the crimes on trial.

We find no abuse of discretion in the trial judge's admission of evidence.

## II

■ Appellant also finds error in the judge's refusal to grant a missing witness charge with regard to the Commonwealth's failure to produce the young adults.

The missing witness inference rule was articulated by the Supreme Court in *Commonwealth v. Jones,* 455 Pa. 488, 317 A.2d 233 (1974), as follows:

> " 'When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.' " (citations omitted).

*Id.,* 455 Pa. at 495, 317 A.2d at 237, quoting *Commonwealth v. Moore,* 453 Pa. 302, 305, 309 A.2d 569, 570 (1973).

*Commonwealth v. Carey,* 313 Pa.Super. 20, 32–33, 459 A.2d 389, 395 (1983).

We find nothing in the present record to indicate that the young adults were available to the Commonwealth as witnesses, or that the Commonwealth was even aware of their identities or whereabouts. The evidence showed merely that seven or eight unidentified youths shouted to Officer Goldsmith as he drove by that the man running down the street had robbed somebody. Officer Goldsmith chased and apprehended the defendant, and shortly thereafter the victim arrived on the scene to identify him. There is no reason

to assume that the Commonwealth's officers later interviewed the youths, nor is there anything to rebut the reasonable expectation that the youths would have long since departed had the Commonwealth tried to look for them. *Cf., e.g., Commonwealth v. Wright,* 444 Pa. 536, 282 A.2d 323 (1971) (named alibi witnesses who knew the defendant personally).

Appellant contends that under *Commonwealth v. Matt,* 295 Pa.Super. 293, 441 A.2d 1239 (1982), the burden was on the Commonwealth to produce evidence that the witnesses were not available to it. *Matt* does not support such a holding. *Matt* was decided under the rubric ineffectiveness of counsel, and held that counsel was ineffective for failing to explain the absence of a witness where the trial court *gave* a missing witness charge against the defendant. Obviously *Matt* has little relevance to the present situation.

Since there is no evidence the witnesses were within the Commonwealth's control, we need not address the other factors bearing on the propriety of a missing witness charge. *See and compare Commonwealth v. Owens,* 315 Pa.Super. 400, 462 A.2d 255 (1983).

Affirmed.

CAVANAUGH, J., concurs in the result.