J-A16005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELGIN ANTHONY MELTON | : | |
| | : | |
| Appellant | : | No. 1554 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 6, 2019
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0005123-2018

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED AUGUST 14, 2020**

Elgin Anthony Melton appeals from the judgment of sentence, entered on June 6, 2019, of an aggregate term of 32 months' to 10 years' imprisonment, in the Court of Common Pleas of Lancaster County, after a jury convicted him of one count each of delivery of cocaine,[1] criminal conspiracy,[2] and criminal use of a communication facility;[3] and his non-jury conviction of driving while operating privilege is suspended or revoked.[4]  On appeal,

---

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S.A. § 903(a).

[3] 18 Pa.C.S.A. § 7512(a).

[4] 75 Pa.C.S.A. § 1543(a).

Appellant challenges the admission of certain testimony by an undercover police officer and the sufficiency of the evidence. After review, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's October 4, 2019 opinion and our review of the certified record.

> . . . On February 6, 2018, members of the Lancaster City Bureau of Police Selective Enforcement Unit (SEU) conducted a "buy/walk" drug detail utilizing a confidential informant (CI) and an undercover police officer, Officer Andrew Mease. At approximately 3:20 p.m., the CI spoke to a Carl Sprague [Sprague] via telephone to arrange for the purchase of crack cocaine at the corner of East Lemon Street and North Duke Street in the City of Lancaster.[a] Officer Mease and the CI drove to that location and parked. The CI called Sprague to tell him they had arrived at the pre-arranged location. Within minutes, Sprague arrived on foot and entered the passenger rear seat of the vehicle. Sprague advised Officer Mease and the CI that he needed to "call his guy to get [the] stuff."
>
> > [a] Sprague was known to the SEU as a "middle man" from a prior drug investigation.
>
> Sprague then placed a phone call to a person believed to be [Appellant] and arranged for the purchase of cocaine at a Turkey Hill convenience store at 410 East Chestnut Street. Sprague drove in Officer Mease's vehicle to the Turkey Hill, where Officer Mease parked the car to the left of the building. At that time, Officer Mease provided Sprague with $40.00 (documented "buy" money) for .4 grams of cocaine.
>
> Sprague exited the vehicle and ran towards a Chevrolet Traverse (Chevy), which was parked at the Turkey Hill gas pumps. Sprague entered the Chevy and a hand-to-hand transaction took place between Sprague and the driver of the Chevy. The Chevy then pulled away from the pumps, entered Chestnut Street and circled around the block. Sprague exited the vehicle at an alley just before the Turkey Hill, walked directly to the Turkey Hill parking lot and re-entered the passenger rear seat of Officer Mease's vehicle. Once in the vehicle, Sprague hand-delivered one clear plastic corner tied bag containing .22 grams of crack cocaine to

Officer Mease.[b]  The delivered substance field-tested positive for cocaine.

> [b]  Sprague was charged as [Appellant's] co-conspirator at Information No. 4032-2018.

During this controlled buy, [Appellant] was observed by Officer Mease operating the gold 2010 Chevy Traverse.[c]  After Sprague exited [Appellant's] vehicle, [Appellant] drove around the eastern part of the City for a few minutes "cleaning his tail"[d] before parking in a lot off of East Chestnut Street.  There [Appellant] exited the Chevy, and entered the rear seat passenger side of a gray Nissan Altima that had a driver and a passenger in the front seat.

> [c] The vehicle being driven by [Appellant] was not owned or registered to [him].  Officer Adam Flurry with the SEU testified that it is common for drug dealers to "go to great lengths so the registration does not come back to their name."  They want "a legitimate car [that] has good insurance, good registration, good inspection, so it lessens the chance that they will get stopped."  [Appellant] testified the Chevy belonged to a family member.
>
> [d] This term refers to the actions taken by a criminal to be sure he or she is not being followed, and to detect police surveillance vehicles.

As the Nissan left the parking lot and turned right onto Reservoir Street, the driver failed to use a turn signal or proper hand signal. The decision was made by the SEU surveillance team to have the "contact car"[e] stop the Nissan so a positive identification could be made of the rear passenger.  [Appellant's] name, date of birth and ID card number were obtained, and his identification was confirmed by a Pennsylvania Department of Transportation (PennDOT) photograph.

> [e] The "contact car" is a marked police car with lights and sirens driven by police officers in full uniform

Meanwhile, Officer Flurry called in K-9 Officer J. Hatfield with the Lancaster City Police to have his dog do a narcotics scan of the exterior of the Chevy that [Appellant] had left in the parking lot.

The dog exhibited a behavior change when he got to the driver's side door at the seam by the "B" post, which is the post between the back of the vehicle and the front of the vehicle, which ultimately led to a final response for the presence of narcotics in the interior of the vehicle. Despite the narcotics hit, the SEU made the decision to leave the vehicle so as not to jeopardize the on-going drug investigation.

A criminal complaint was eventually filed on August 7, 2018, and an arrest warrant was issued for [Appellant] on August 9, 2018. [Appellant] was arrested on August 13, 2018, and charged with [the aforementioned crimes].

\* \* \* \*

A jury trial commenced on March 20, 2019. After one-and-a-half days of testimony, the jury convicted [Appellant] of the [aforementioned charges]. Sentencing was deferred pending a pre-sentence investigation.

On June 6, 2019, [Appellant] was sentenced to an aggregate sentence of 32 months' to 1O years' incarceration in a state correctional institution. . . .

On June 14, 2019, [Appellant] filed a timely post-sentence motion. . . . The Commonwealth filed a response to [Appellant's] post-sentence motion on June 25, 2019. The trial transcript was filed on July 10, 2019. By [o]pinion and [o]rder dated August 13, 2019, [Appellant's] post-sentence motion was denied.

A timely appeal was filed with the Superior Court of Pennsylvania from the judgment of sentence imposed on June 6, 2019, as finalized by the denial of [Appellant's] post-sentence motion on August 13, 2019. . . . [On September 12, 2019, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. Appellant filed a timely Rule 1925(b) statement on October 3, 2019. On October 4, 2019, the trial court issued an opinion.].

Trial Court Opinion, 10/04/19, at 1-7 (record citations and some footnotes omitted).

In his first claim, Appellant challenges the admission of large portions of the testimony of undercover police officer Andrew Mease. *See* Appellant's Brief, at 19-30. Specifically, Appellant alleges the trial court should not have admitted hearsay "testimony of a non-testifying CI and a non-testifying [middle man] under the guise of course of conduct testimony, where the testimony was actually offered for its truth and the jury was not given a limiting instruction regarding the use of said testimony." *Id.* at 19. For the reasons discussed below, we find Appellant waived certain of his challenges to the admission of the testimony; some of his claims lack merit because the objected-to questions did not seek to elicit hearsay testimony; and the remaining evidence was properly admitted to explain the police's course of conduct. Moreover, while we find the trial court erred in failing to give a limiting instruction to the jury, under the particular circumstances of this case, such error was harmless.

The following principles guide our review:

With regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and quotation marks omitted). Moreover, an appellate court may affirm an order of the trial court on any basis if the decision is correct. *See Commonwealth v. Hernandez*, 886 A.2d 231, 240 (Pa. Super. 2005).

The Pennsylvania Rules of Evidence provide that:

All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.

Pa.R.E. 402.

Moreover,

[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Thus, any out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay. *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1017 (Pa. 2007)[, *cert. denied*, 128 S.Ct. 1879 (2008] (citing *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749, 754 (Pa. 1987)).

*Commonwealth v. Johnson*, 42 A.3d 1017, 1035 (Pa. 2012) (internal quotation marks omitted).

As discussed above, Officer Mease was the undercover officer in the investigation. At trial, he testified to the events which led up to and through the drug deal, which was recorded on video.[5] *See* N.T. Trial, 3/20/19, at 65-

---

[5] The trial court admitted the video at trial as Commonwealth's Exhibit 1. It is an edited compilation taken from nine different video cameras maintained by the Lancaster Safety Coalition. *See* Trial Ct. Op., at 2 n.2; N.T. Trial 3/20/19, at 92-94, 140-41.

124. Office Mease supplied narration to various portions of the video. During the approximately fifty-nine pages of Officer Mease's direction examination, Appellant objected twelve times. *See id.* at 81-84, 86, 87 (twice), 89, 90-91, 101-02, 109, 116.

Our review of the record demonstrates three of the twelve objections were not on the grounds of hearsay but rather on the grounds of non-responsiveness and relevancy. *See id.* at 101,[6] 109,[7] and 116.[8] "Where a specific objection is interposed, other possible grounds for the objection are waived." *Commonwealth v. Shank*, 883 A.2d 658, 672 (Pa. Super. 2005) (citation omitted). Because Appellant did not object to the admission of this evidence on the grounds of hearsay, he waived any claims regarding these three objections. *See id.* at 672.

_____

[6] The Commonwealth asked Officer Mease at what point he became aware Sprague, the middle man, did not have drugs in his possession. Mease responded, "As soon as he gets in the vehicle he lets me know that he has to call someone to get it. Otherwise it would have occurred right then and there." N.T. Trial, 3/20/19, at 103. Appellant objected to the answer as non-responsive and the trial court overruled the objection. *See id.*

[7] Appellant objected on relevancy grounds to a question from the Commonwealth concerning the length of time this drug deal took and under what circumstances a quicker drug deal would take place. *See id.* at 109. The trial court overruled this objection. *See id.*

[8] Appellant objected to a question about how one ingested crack cocaine on relevancy grounds and the trial court overruled the objection. *See id.* at 116.

In another three instances, the trial court either sustained the objection or directed the Commonwealth to rephrase the question and Appellant did not object to rephrased questions. N.T. Testimony, 3/20/19, at 85-86,[9] 89,[10] 90-91.[11] Because in these three instances the trial court did not adversely rule on Appellant's objection and Appellant did not place any further contemporaneous objection on the record, his issue with respect to these three objections is waived. **See Commonwealth v. Leaner**, 202 A.3d 749, 771 (Pa. Super. 2019) (finding issue waived where appellant failed to object at trial), *appeal denied*, 216 A.3d 226 (Pa. 2019)); **see also Epstein v. Saul**

---

[9] The Commonwealth asked Officer Mease if the CI placed a telephone call to Sprague to let him know they had arrived at the location of the meeting with him. **See id.** Officer Mease replied the CI placed the phone call and Sprague received it; when he started to testify as to what the CI told him Sprague said, Appellant objected to the testimony as hearsay. **See id.** at 86. The trial court sustained the objection and the Commonwealth moved on to another line of questioning. **See id.**

[10] The Commonwealth questioned Officer Mease about what actions he took as a result of a telephone conversation between Sprague and Appellant. **See id.** at 89. In his answer Officer Mease offered some speculative testimony and Appellant objected on hearsay grounds. **See id.** The trial court ordered the Commonwealth to rephrase the question, which it did, and Appellant did not offer any further objection. **See id.**

[11] The Commonwealth asked Officer Mease what happened after Sprague ended a phone call with Appellant. **See id.** at 90. Appellant objected when Officer Mease began to say what Sprague told him. **See id.** Again, the trial court directed the Commonwealth to rephrase the question to avoid hearsay and Appellant did not object to the rephrased question. **See id.**

*Ewing, LLP*, 7 A.3d 303, 314 (Pa. Super. 2010) (declining to address issue where trial ruling benefitted appellant).

In another two instances, while Appellant objected on hearsay grounds, our review of the record reveals the questions at issue did not elicit hearsay. *See* N.T. Trial, 3/20/19, at 83-84, and 86. Thus, Appellant's claims regarding these two instances fail.

In the first instance, the Commonwealth asked Officer Mease to state the purpose of having the CI make the phone call to Sprague. *Id.* at 83. Appellant objected on hearsay grounds. *Id.* at 84. However, this question did not call for hearsay, but rather Officer Mease's personal knowledge. Officer Mease was part of the police team running this operation, it was within his personal knowledge to testify having the CI make phone calls to a middle man was for the purpose of trying to arrange a drug deal.

In the second instance Appellant objected on hearsay grounds to the Commonwealth's question of whether Sprague made contact with Officer Mease and the CI while they were in the undercover vehicle. *See id.* at 86. Again, this question did not call for hearsay, Mease testified based upon his personal observation, he heard the CI, who was sitting with him in the undercover vehicle call out to Sprague, he watched Sprague walk towards the car and get into their vehicle. *See id.*

Accordingly, we are left with four instances where counsel objected to testimony as hearsay and the trial court allowed it in either explicitly or

implicitly because the testimony went to course of conduct. *See id.* at 81-83, 87 (twice), 102. First, the trial court permitted Officer Mease to testify that the CI called Sprague. *See id.* at 81-83. Second, it also accepted Officer Mease's testimony that Sprague introduced himself to Officer Mease as "Carl." *Id.* at 87. Third, it let in testimony Sprague informed Officer Mease he would "have to call his guy to get stuff." *Id.* Lastly, the trial court allowed testimony when Sprague exited the car at the first meeting spot for the deal he told Officer Mease where he would sit and he wasn't abandoning him. *Id.* at 102.

As noted above, the Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Again, we note "[a]n out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." *Rega*, 933 A.2d at 1017.

Multiple decisions have held that a police officer's testimony concerning an out of court statement is admissible to explain his course of conduct. *See id.* (trooper's testimony on morning following murder, codefendant had told trooper he and defendant dropped defendant's daughters off at defendant's mother's home before leaving together, was not inadmissible hearsay, where Commonwealth introduced testimony to explain reason for further investigating codefendant and defendant); *Sneed,* 526 A.2d at 754 (police officer's testimony describing radio call which prompted his trip to crime scene

was not hearsay because it was introduced solely to explain why he went to scene); *Commonwealth v. Estepp*, 17 A.3d 939, 945 (Pa. Super. 2011) (police officer's testimony regarding statements by confidential informant admissible to explain officer's course of conduct in investigating drug sales); *Commonwealth v. Dargan*, 897 A.2d 496, 499, 501–02 (Pa. Super. 2006) (officer's testimony as to out-of-court statements made to him by confidential informant, consisting of report heroin could be purchased from defendant, description of defendant and his automobile, his address, and name of his girlfriend, admissible for purpose of explaining officer's acts in connection with his investigation).

Here, the Commonwealth did not present Officer Mease's testimony for its truth but simply to explain his course of conduct. This case involved several actors, multiple cell phone calls, and trips to various parts of Lancaster. As such, this testimony was not hearsay under the authorities listed above. Accordingly, Appellant's argument the trial court improperly admitted hearsay testimony does not merit relief. *See Rega*, 933 A.2d at 1017.

Appellant also maintains, even if the trial court properly admitted the evidence, he is still entitled to relief because the trial court failed to give a limiting instruction to the jury. *See* Appellant's Brief, at 27-30. While we agree with Appellant the trial court erred in failing to give a limiting instruction, we find in the particular and unusual circumstances of this case, the error was harmless.

Our Supreme Court recently reiterated where evidence is admitted for a limited purpose, the trial court is required to give, "a limiting instruction to focus the jury's consideration of the evidence to its appropriate purpose." ***Commonwealth v. Coleman***, — A.3d —, — 2020 WL 2529142, at *5 (Pa. May 19, 2020).[12] Thus, it is clear the trial court's failure to instruct the jury on the limited relevance of Officer Mease's testimony was error. However, this does not end our inquiry as our review of the record shows defense counsel neither requested such a limiting instruction nor objected to the trial court's failure to provide one. ***See*** N.T. Trial, 3/20/19, at 65-124.

In ***Commonwealth v. Underwood***, 500 A.2d 820, 822-24 (Pa. Super. 1985), this Court specifically addressed a situation where the trial court admitted course-of-conduct testimony, failed to give a limiting instruction, and defense counsel did not object. ***See id.*** After first finding the testimony in question was properly admitted to show course of conduct, we addressed the issue of defense counsel's failure to either move for a limiting instruction or object to the failure to give one. ***See id.*** at 823-24. We stated it was proper to consider defense counsel's failure to mitigate any damage caused by the

_____

[12] ***Coleman*** was an appeal from the dismissal, without a hearing, of a petition filed pursuant to Post-Conviction Relief Act. Our Supreme Court held there was arguable merit to the appellant's claim counsel was ineffective for failing to object to the admission of testimony which appellant argued was hearsay and the PCRA court believed was appropriately admitted to show course-of-conduct, and, therefore, trial court should not have dismissed the PCRA petition without a hearing. ***See id.*** It did not reach the underlying merits of the appellant's claim.

testimony in determining whether the defendant suffered prejudice. *See id.* at 824.

Moreover, in addressing the issue of whether the trial court's error in failing to instruct the jury prejudiced Appellant, we believe it is necessary to look at the specifics of the testimony in question. In *Commonwealth v. Dent*, 837 A.2d 571, 578-82 (Pa. Super. 2003), this Court discussed at length the issue of the proper admission of testimony which went to course of conduct as opposed to impermissible hearsay used to bolster the prosecution's case. *See id.* In distinguishing between the two, we focused on whether the objected-to testimony implicated the defendant in the crime and/or went to his identity in a case where identity was an issue, finding in those cases, the trial court should not have admitted the testimony and such error was not harmless. *See id.*

Here, none of the objected-to statements directly implicated Appellant in any criminal activity or even mentioned him. Moreover, Appellant's defense at trial was not: (1) mistaken identity, (2) a drug deal did not happen, or, (3) he did not engage in cell phone calls with Sprague which resulted in a drug deal. *See* N.T. Trial, 3/21/19, at 232-22. Instead, he claimed it was he who was buying drugs from Sprague rather than vice-versa. *See id.* Under these circumstances, particularly in light of defense counsel's failure to act, we cannot say the admission of the statements, even without a limiting

instruction, prejudiced Appellant.[13]  *See Underwood*, 500 A.2d at 824. Appellant's first claim does not merit relief.

In his second through fourth claims, Appellant challenges the sufficiency of the evidence supporting his conviction for delivery of cocaine, conspiracy, and criminal use of a communication facility.[14]  *See* Appellant's Brief, at 31-45.  Specifically, Appellant argues:  (1) the evidence did not show Appellant actually delivered cocaine to Sprague absent improperly admitted testimony; (2) there was no evidence Appellant and Sprague engaged in a conspiracy to deliver cocaine; and (3) there was no evidence Sprague contacted Appellant by telephone and no evidence Appellant delivered cocaine to Sprague.  *See id.*

Our standard of review for a challenge to the sufficiency of the evidence is well settled:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary.  When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, are sufficient to establish all elements of the offense beyond a

---

[13] We wish to make it abundantly clear, despite defense counsel's failure to request a limiting instruction or object, had the statements in question directly implicated Appellant or had his defense been otherwise, we would have had no hesitation in vacating the judgment of sentence and remanding the matter for a new trial.  It is incumbent upon a trial court when it admits evidence for a limited purpose to instruct the jury in the proper consideration of such evidence.  *See Coleman*, *supra*.

[14] Appellant does not challenge his conviction for driving with a suspended license.

reasonable doubt **when viewed in the light most favorable to the Commonwealth**[.]  The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

*Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa. Super. 2016) (internal citations and quotation marks omitted, emphasis added), *appeal denied*, 167 A.3d 698 (Pa. 2017).

Delivery of a controlled substance is outlined in 35 P.S. § 780113(a)(30), as follows:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance[.]

Pursuant to its statutory definition, "'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship."   35 P.S. § 780–102(b).  Thus, in order to obtain a conviction for the delivery of a controlled substance, the Commonwealth must establish beyond a reasonable doubt "[the actor] knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004). "A defendant actually transfers drugs [, *inter alia*,] whenever he physically conveys drugs to another person."  *Id.*

- 15 -

The crime of conspiracy is set forth at 18 Pa.C.S.A. § 903, which provides, in relevant part:

> **(a)  Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>>
>> (2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

Thus, to sustain a conviction for conspiracy, the Commonwealth must prove:

> the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy.
>
> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) (citations and some quotation marks omitted).

When determining whether the evidence was sufficient to support a conviction for conspiracy, we consider the following factors: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002). Each co-conspirator is liable for the acts of the other co-conspirators. *See Commonwealth v. King*, 990 A.2d 1172, 1178 (Pa. Super. 2010).

To convict a defendant of criminal use of a communication facility, the trier of fact must find the defendant "use[d] a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under . . . The Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S.A. § 7512(a). Under Pennsylvania law, a telephone constitutes a communication facility. 18 Pa.C.S.A. § 7512(c). As noted above, 35 P.S. § 780–113(a)(30) prohibits the delivery of a controlled substance.

Initially, Appellant's arguments suffer from several fatal flaws. He cherry picks the evidence at trial, viewing it in the light most favorable to himself rather than the Commonwealth. Secondly, he provides no basis to support his contention that, in order to convict him, the jury must have improperly considered the course-of-conduct evidence for the truth of the

matter asserted.[15]  Lastly, Appellant's claim is, in essence, a contention the jury should have credited his testimony rather than that of the police.

However, such an argument goes to the weight of the evidence, not the sufficiency of the evidence. *See Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (holding that claim jury should have believed appellant's version of event rather than victim's goes to weight, not sufficiency of evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (observing that review of sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (stating that credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence).

At trial, on cross-examination, Appellant admitted he used a cell phone to contact Sprague, although Appellant claimed it was so he could buy drugs not to sell them.  *See* N.T. Trial 3/21/19, at 239-40.  After initially claiming he was solely a drug user, Appellant admitted he had two prior felony convictions for drug dealing.  *See id*. Appellant acknowledged he did not use his personal vehicle for this drug deal. *See id.* at 241.

---

[15] We note this Court has not considered the course-of-conduct testimony in reaching the conclusion the evidence was sufficient to sustain the Appellant's conviction.

Further, as discussed in detail above, Police Officer Andrew Mease, who had sixteen years of experience, seven of which were in the SEU, testified about the events of February 6, 2019. He also testified, based on his experience, about the differences between drug deals when he purchased drugs through a middle man rather than directly from a dealer, and about the type of behavior typically engaged in by drug dealers. *See* N.T. Trial, 3/20/19, at 109-11.

Mease stated drug deals when done directly between himself and a dealer were generally quite fast, "[t]here's no — there's no wiggle room there. There's no — because there's other things they need to do, other deals they need to make. So it's very quick. They'll get in the car, do the exchange, they get out of the car." *Id.* He continued explaining deals with middle men were typically much lengthier because, "[w]e're always operating off of the dealer's time and the middle man trying to get ahold of that person as opposed to me just reaching [the dealer]. " *Id.* He concluded,

> If [Sprague] would have had the drugs on him, he would have got in my car, delivered the drugs, I give him the money, he gets out and he goes about his business because there's other people that he's going to sell to. That didn't happen in this case.
>
> In my experience, the seeker has always gone to them. Unfortunately, in the drug dealer world, it would be great if we as the undercover were able to dictate, okay, this is where I want to meet you, this is how much I want, you come see me. Unfortunately it doesn't work that way. We're at the call of the dealer. The dealer calls the shots. In times we've had to change locations three and four times because they're that paranoid. So unfortunately, we're the ones that go — have to go to them and follow their directions as to where they want to do this at. . . .

- 19 -

*Id.*

Police Officer Adam Flurry, who had five years' experience working on drug crimes and had participated in over 300 undercover drug transactions, was the surveillance officer during the incident. N.T. Trial, N.T. Trial, 3/20/19, at 132-33; N.T. Trial 3/21/19, at 180. He also testified, based on his training and experience, about the differences between drug deals done directly with dealers and those done through middle men. He reiterated deals done directly with dealers were speedy transactions. *Id.* at 184-86.

> I've . . . contacted dealers and literally they have not even stopped walking. They just throw the drugs at me. . . [T]he average time if I could contact an actual person who has drugs on them that I would interact with them, 20, 30 seconds to a minute. They don't want to be with me because they don't want to arouse suspicion because they know police officers are looking for people who may not belong together or people who are driving around aimlessly, getting out of a car, looking around, that type of thing.
>
> However, if I contact someone [who will] go to somebody else, it becomes an event because this person's calling someone else who's telling them where to go. Sometimes the dealer doesn't want to go to the other side of town. They change their mind or they have something else they want to do over here to say, no, you come over here. You are at the whim of a dealer. You don't tell the dealer where to come. They tell you where to go because they have what you want . . . They dictate it.
>
> And they will change it [on] occasion. You'll get to a spot, you'll call them, hey, I'm here. All right, I'll be right there. Couple minutes later, see me over here. Okay. Drive over there. It's really degrading as a lifestyle to do that and be at the whim of a drug dealer, changing locations. . . .
>
> [Officer Flurry concluded because Officer Mease ends up driving to various locations instead of immediately getting drugs from Sprague after he enters Officer Mease's vehicle, this indicated to

> him] [t]hat [Sprague] doesn't have drugs and [he] is going to meet someone to get the drugs.

*Id.*     Officer Flurry also discredited defense counsel's theory that Sprague having Officer Mease change locations was a "feint" or "move to confuse," stating simply this did not happen with street-level drug deals. *Id.* at 187-89. He further explained in detail what a feint would look like and why it was inconsistent with the events which occurred in February 2019. *See id.*

Moreover, the jury was able to view the entire incident on video. Thus, they were able to observe both the CI and Sprague make phone calls, the different locations Office Mease had to drive to, the length of the time the deal took, a hand-to-hand exchange between Sprague and Appellant in the vehicle driven by Appellant, and Appellant's actions after the deal.

It was well within the province of the jury to credit the testimony of the police officers, the fact Sprague was known to the police as a middle man, and Appellant's admission he used his cell phone to arrange a drug deal with Sprague. It was also within their province to view the video and conclude Appellant's actions were those of a dealer not those of a user; and to not credit Appellant's self-serving testimony he was buying drugs not selling them.

Our review of the record demonstrates the evidence was sufficient to sustain Appellant's convictions for drug delivery, conspiracy, and criminal use of a communications facility. *See Murphy*, 844 A.2d at 1234; *Commonwealth v. Ellison*, 213 A.3d 312, 318-19 (Pa. Super. 2019) (finding evidence sufficient to sustain convictions for drug delivery and criminal use of

communication facility where, under supervision of police, confidential informant, used text messages and/or cell phone to contact defendant and arrange controlled buy, police observed CI interact with defendant, and, immediately following interaction CI gave bag with drugs to police), *appeal denied*, 220 A.3d 521 (Pa. 2019); ***Commonwealth v. Gibson***, 668 A.2d 552, 555 (Pa. Super. 1995) (holding appellant's presence with co-conspirator during entire criminal episode proved conspiracy); ***Commonwealth v. Cooke***, 492 A.2d 63, 68 (Pa. Super. 1985) (holding evidence sufficient to sustain conviction of conspiracy where appellant was present at scene, strongly associated with co-conspirator and personally participated in crime). Appellant's final three issues do not merit relief.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2020